IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-187-FL

| | | |
|---|---|---|
| DEFINITIVE STAFFING SOLUTIONS, INC., a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| STAFFING ADVANTAGE, L.L.C., a North Carolina limited liability company, THE COASTAL GROUP, INC., a North Carolina corporation, RANDAL E. GORE, and SANDRA L. GORE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 18). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, defendants' motion to dismiss is denied.

## STATEMENT OF THE CASE

This case concerns the failure of a business relationship between the parties, precipitated by alleged misrepresentations used to create and maintain the business relationship. Plaintiff, a California corporation, commenced this action on October 15, 2018. In its amended complaint, plaintiff alleges fraudulent inducement, negligent misrepresentation, unfair and deceptive trade practices, civil conspiracy, and breach of contract. Plaintiff seeks various remedies, including

compensatory and punitive damages, as well as declaratory judgment and rescission of contract. On January 22, 2019, defendants filed the instant motion to dismiss, directed against all claims save plaintiff's breach of contract claim against defendant Staffing Advantage, L.L.C. ("Staffing Advantage").

## STATEMENT OF FACTS

Plaintiff is a California based full-service staffing company that provides staffing for companies seeking to fill management, technical, light industrial and administrative positions. (Am. Compl. ¶ 17). Defendants Staffing Advantage, and defendant Coastal Group, Inc. ("Coastal Group"), are North Carolina companies that hold themselves out as providing outsourced services to manage human resources, administrative benefits and services, and payroll administration. (Id. ¶¶ 18–19). Defendants Randal E. Gore ("R. Gore") and Sandra L. Gore ("S. Gore") are managers or officers of defendants Staffing Advantage and Coastal Group. (Id. ¶¶ 20–21).

In or about October 2015, James Pinedo ("Pinedo"), plaintiff's president, initiated discussions with defendant Staffing Advantage's representatives, defendant R. Gore and Pedro Baez ("Baez"). (Id. ¶ 23). Pinedo reached out regarding the possibility of retaining defendant Staffing Advantage as an outsourced service provider for various human resources and employer responsibilities for plaintiff. (Id. ¶¶ 22–23). Pinedo expressed that plaintiff required detailed reports with breakdowns of the withholdings for plaintiff's employees for each payroll and the amounts defendant Staffing Advantage billed to plaintiff. (Id. ¶ 24). Pinedo also relayed it was important that defendant Staffing Advantage was properly licensed in California to provide employee management services. (Id. ¶ 25). Baez represented defendant Staffing Advantage would provide weekly reports to plaintiff breaking down the amounts defendants Staffing Advantage billed to

2

plaintiff, including the withholdings allegedly owed by plaintiff. (Id. ¶ 24). Defendant R. Gore told Pinedo that defendant Staffing Advantage was properly licensed to provide employee management services and was insured in California and other states. (Id. ¶ 25).

Following the phone call, Baez provided a written proposal for services to Pinedo, titled "Recommendations for Your Worksite" ("Proposal"). (Id. ¶ 26; see Proposal (DE 17-1)). The Proposal gave an overview of potential services defendant Staffing Advantage offered in areas including personnel administration and risk management, as well as proposed rates for services provided. (See Proposal (DE 17-1) at 8–12). Based on the representations made by Baez and defendant R. Gore, as well as the details of the Proposal, plaintiff hired defendant Staffing Advantage to provide payroll management, federal and state employment tax administration, and other administrative services. (Am. Compl. ¶ 28).

On November 4, 2015, defendant Staffing Advantage and plaintiff entered an affiliation agreement for professional employer services ("Agreement"). (Id. ¶ 29). Defendant Staffing Advantage agreed to "[p]ay wages to [e]mployees, and prepare, administer, compile, and file all payroll information and distribute payroll checks to employees" and ". . . assume responsibility for the withholding and remittance of federal and state employment taxes." (Id. ¶ 30; Agreement (DE 17-2) at 3). These taxes included federal, state, and local income taxes, as well as federal and state unemployment taxes. (Am. Compl. ¶ 30; Agreement (DE 17-2) at 3). In return, plaintiff agreed to pay service fees set forth in the Agreement to defendant Staffing Advantage, along with "all wages, payroll taxes and benefit costs incurred by or payable to all employees." (Agreement (DE 17-2) at 4, 13–15).

In or about December 2015, defendant Staffing Advantage began calculating, withholding,

3

filing and paying to the appropriate government agencies, all federal and state unemployment taxes, worker's compensation, and health insurance obligations on behalf of plaintiff. (Am. Compl. ¶ 33). Federal and state unemployment taxes are paid by employers to fund unemployment programs and compensation benefits. (Id. ¶ 36). In 2016 and 2017, a 2.4% federal unemployment tax was assessed on each employee's first $7,000.00 of gross pay, while in California a 4.5% state unemployment tax was assessed on each employee's first $7,000.00 of gross pay. (Id. ¶¶ 37–39).

Defendant Staffing Advantage started its first week of payroll responsibilities for plaintiff on January 11, 2016. (Id. ¶¶ 40, 42). It issued weekly invoices purporting to show the amounts defendant Staffing Advantage paid on behalf of plaintiff in federal and state unemployment taxes, worker's compensation, and health insurance withholdings. (Id. ¶¶ 45–46). However, defendant Staffing Advantage invoiced plaintiff for federal and state unemployment taxes for hundreds of employees in 2016 who received gross pay in excess of $7,000.00, where plaintiff was not required to pay unemployment taxes on that excess income. (Id. ¶¶ 43–45). Defendant Staffing Advantage also inflated workers' compensation and health insurance withholdings for plaintiff's employees. (Id. ¶ 45–46). Plaintiff received these invoices from defendant Staffing Advantage and paid them. (Id. ¶ 46).

In or about September or October 2016, defendant R. Gore informed Pinedo that defendant Staffing Advantage had "switched over" to defendant Coastal Group, that defendant Coastal Group was taking over employer of record responsibilities for defendant Staffing Advantage, and that defendant Coastal Group would provide plaintiff with those services going forward. (Id. ¶ 52). Defendant Coastal Group never provided plaintiff a new contract. (Id.). However, defendant Coastal Group continued the same invoicing practices as defendant Staffing Advantage, issuing

4

invoices to plaintiff purporting to show amounts that defendant Coastal Group claimed it had calculated and paid on behalf of plaintiff. (Id. ¶¶ 53–55). Plaintiff then sent a check or wire to defendant Staffing Advantage. (Id. ¶ 55).

In or about January 2017, plaintiff began to have concerns about the invoices received for amounts claimed for reimbursement for withholdings for plaintiff's employees. (Id. ¶ 58). Plaintiff requested defendants Staffing Advantage and Coastal Group provide a breakdown of previous invoices, payroll receipts for plaintiff's employees, and costs reports so that plaintiff could audit the invoices. (Id. ¶ 60). Defendants Staffing Advantage and Coastal Group failed to provide plaintiff with the requested materials. (Id. ¶ 61).

Plaintiff subsequently learned that defendant Staffing Advantage was not licensed to provide professional employer services in California or in North Carolina. (Id. ¶ 63). Plaintiff alleges defendants were operating as a professional employer organization, and violated the North Carolina Professional Employer Organization Act. (Id. ¶¶ 63–65). Specifically, defendant Staffing Advantage was legally required to hold a license from the North Carolina Department of Insurance and file a surety bond in the amount of $100,000.00 with the Commissioner of Insurance. (Id. ¶¶ 66–67). No defendant holds a license to offer or engage in professional employer services in North Carolina, and no defendant filed a surety bond. (Id. ¶¶ 69–70).

Plaintiff alleges defendants intentionally and knowingly misrepresented and exaggerated the experience and licensure status of defendants Staffing Advantage and Coastal Group to induce plaintiff to engage defendants to provide professional employer services. (Id. ¶ 72). Plaintiff further alleges that, had plaintiff known the truth about defendants' false misrepresentations, it would not have engaged defendant Staffing Advantage to provide professional employer services, allowed

5

defendant Coastal Group to assume providing such services to plaintiff, or paid the invoices by defendants Staffing Advantage and Coastal Group. (Id. ¶ 73).

## COURT'S DISCUSSION

A.  Standard of Review

To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Ordinarily, a plaintiff need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, Rule 9(b) creates an exception to this liberal pleading standard and requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." Maguire Fin., LP v. PowerSecure Int'l, Inc., 876 F.3d 541, 546 (4th Cir. 2017) (citing Pub. Emps.' Ret. Ass'n of Colo. v. Deloitte & Touche LLP, 551 F.3d 305, 311 (4th Cir. 2009)).

6

B.  Analysis

Defendants argue that all causes of action except plaintiff's breach of contract claim against defendant Staffing Advantage should be dismissed for failure to state a claim. They argue that plaintiff's fraud based claims fail to plead sufficient facts to state a claim for fraud under the heightened pleading standard in the federal rules. They also argue that the economic loss rule bars all claims save any grounded on breach of contract because contract law, not tort law, should determine plaintiff's remedies. Finally, defendants argue plaintiff fails to plead sufficient facts for civil conspiracy and assumption of contract claims. The court addresses these contentions in turn.

1.  Pleading Sufficient Facts

a.  Fraud

A plaintiff meets the pleading requirement of Rule 9(b) by, "at a minimum, describ[ing] the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." United States ex rel. Bunk v. Gov't Logistics N.V., 842 F.3d 261, 275 (4th Cir. 2016) (internal citations omitted). In other words, plaintiff must allege those facts "referred to as the 'who, what, when, where, and how' of the alleged fraud." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (internal citation omitted). However, malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. See Fed. R. Civ. P. 9(b).

Baez and defendants R. Gore, Staffing Advantage, and Coastal Group allegedly made false representations to plaintiff. (See Am. Compl. ¶¶ 24–30, 45–46, 55). Those representations were that defendants Staffing Advantage and Coastal Group were properly licensed to provide professional staffing services and the amounts defendants Staffing Advantage and Coastal Group

7

allegedly paid in taxes and benefits on behalf of plaintiff. (Id. ¶¶ 25, 46, 55). Plaintiff alleges the representations were false because, among other things, defendants Staffing Advantage and Coastal Group were not licensed to provide employer staffing services and claimed to pay federal and state unemployment tax amounts not owed by plaintiff. (See id. ¶¶ 43–46, 63–72). The alleged misrepresentations regarding licensure were made by defendant R. Gore during a phone call with Pinedo in or about October 2015, while the alleged misrepresentations regarding the amount of taxes paid were made every week through invoices sent to plaintiff by defendants Staffing Advantage and Coastal Group in 2016 and 2017. (Id. ¶¶ 25, 46). In sum, plaintiff alleges "who, what, when, where, and how" with sufficient particularity. Wilson, 525 F.3d at 379.

Defendants argue that plaintiff has failed to allege the circumstances of fraud. Defendants ignore the allegations laid out in the complaint, and invite the court to do the same. The court rejects the invitation, and does not dismiss plaintiff's fraudulent inducement claim.

    b.  Declaratory Relief and Recission, Negligent Misrepresentation, Unfair and Deceptive Trade Practices, and Punitive Damages

Defendants argue plaintiff's claims of negligent misrepresentation, unfair and deceptive trade practices, punitive damages, and declaratory relief and rescission are subject to dismissal for failure to plead the circumstances of fraud under Rule 9(b). (See Def. Mem. (DE 19) at 8–11 (citing Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 727, 729 (M.D.N.C. 2015); SouthStar Funding, L.L.C. v. Warren, Perry & Anthony, P.L.L.C., 445 F. Supp. 2d 583, 585 (E.D.N.C. 2006)). Assuming without deciding that Rule 9(b) applies to the disputed claims, plaintiff has pleaded sufficient facts for the reasons stated in the court's preceding discussion.

c. Civil Conspiracy

"[A] complaint sufficiently states a claim for civil conspiracy when it alleges "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." Krawiec v. Manly, 370 N.C. 602, 614 (2018) (quoting State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 444 (2008)). "In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts." Shope v. Boyer, 268 N.C. 401, 405 (1966); Reid v. Holden, 242 N.C. 408, 414–15 (1955).

Plaintiff alleges wrongful misrepresentations that deceived plaintiff and caused it injury in this case. (See Am. Compl. ¶¶ 24–25, 43–46, 63–72). Given the consistency of the alleged misrepresentations, combined with the efforts of Baez and defendant R. Gore to provide assurances to plaintiff on behalf of defendants Staffing Advantage and Coastal Group, the court reasonably infers an agreement among these individuals concerning defendants' transactions with plaintiff. (See id. ¶¶ 23–30, 51–55). Defendant's motion to dismiss plaintiff's civil conspiracy claim is denied.

d. Breach of Contract by Defendant Coastal Group

Finally, defendant Coastal Group argues that it cannot be held liable for breach of contract because there was no contract between it and plaintiff.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). A corporation may be liable for a contract to which it was not initially a party "where it has adopted the contract, acquiesced therein, or received the benefits thereof." Rose v. Vulcan Materials Co., 282 N.C. 643, 670 (1973); Herring v. Wallace

Lumber Co., 163 N.C. 481, 487 (1913).

Plaintiff alleges that, in or about September or October 2016, defendant R. Gore informed Pinedo that defendant Coastal Group was taking over employer of record responsibilities for defendant Staffing Advantage, and that defendant Coastal Group would be providing those services to plaintiff going forward. (Am. Compl. ¶ 51). Moreover, after defendant Coastal Group took over defendant Staffing Advantage's responsibilities, it would periodically issue invoices to plaintiff purporting to show amounts defendant Coastal Group claimed it had paid on behalf of plaintiff. (Id. ¶ 55). In short, defendant Coastal Group provided all professional employer services previously provided by defendant Staffing Advantage. (Id. ¶ 53).

Viewing the facts in the light most favorable to plaintiff, the Agreement between defendant Staffing Advantage and plaintiff, subsequently adopted by defendant Coastal Group through its actions, is a valid contract. (See Agreement (DE 17-2)). Moreover, plaintiff alleges a breach based on the failure to withhold the proper amount of state and federal taxes by defendant Coastal Group in the same manner as defendant Staffing Advantage. (Am. Compl. ¶ 55; Agreement (DE 17-2) at 3). Defendants' motion to dismiss plaintiff's breach of contract claim against defendant Coastal Group is denied.

2. Economic Loss Rule

"North Carolina's economic loss rule provides that 'ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor.'" Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 240 S.E.2d 345, 350 (1978)). Under this rule, a "tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract."

Id. (quotations omitted). "It is the law of contract, not tort law, which defines the obligations and remedies of the parties in such a situation." Id. (quotations omitted). "Accordingly, North Carolina law requires' courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim." Id. (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 346 (4th Cir. 1998)); Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp., 15 F.3d 327, 330 (4th Cir. 1994).

The North Carolina Supreme Court has addressed the type of conduct which creates an independent tort. See Newton v. Standard Fire Ins. Co., 291 N.C. 105, 111 (1976); Oestreicher v. Am. Nat. Stores, Inc., 290 N.C. 118, 135 (1976). In Oestreicher, the North Carolina Supreme Court considered whether a plaintiff's claim of punitive damages for fraud arising from breach of a lease contract was cognizable under North Carolina law. Oestreicher, 290 N.C. at 133. There, plaintiff produced evidence that defendant had for several years misinformed plaintiff of defendant's net sales in order to reduce his payment obligations under a commercial lease. Id. at 132–33. The court stated that, while plaintiff alleged a claim for breach of contract, "at the same time allegations of fraud and deceit are obvious from the manner in which the breach is alleged." Id. at 135–36. The court concluded by holding "in this type of contract case with substantial tort overtones emanating from the fraud and deceit the better rule would require that defendant be punished by permitting plaintiff to recover punitive damages." Id. at 136.

This case is analogous to Oestreicher. Plaintiff points out that federal unemployment tax was a 2.4% tax assessed on each employee's first $7,000.00 of gross pay, while state unemployment tax in California was a 4.5% tax assessed on each employee's first $7,000.00 of gross pay. (Am. Compl. ¶¶ 37–39). On a weekly basis during 2016 and 2017, defendants Staffing Advantage and

11

Coastal Group allegedly invoiced plaintiff for taxes on employee income in excess of $7,000.00, overstating the amount of plaintiff's obligation. (See id. ¶¶ 43–46, 53–55). In addition, during their phone conversation with Pinedo in or about October 2015, Baez and defendant R. Gore represented to plaintiff that defendant Staffing Advantage was properly licensed to provide employee management services and was insured in California and other states. (Id. ¶¶ 25). Plaintiff alleges that the representations were demonstrably false, and plaintiff would not have hired defendant if it had known such representation was false. (See id. ¶¶ 63–72). These alleged misrepresentations are sufficient to constitute an independent tort.

Defendants argue that plaintiff's case boils down to a mere failure on their part to carry out the promises in their Agreement, and that plaintiff must allege a duty separate and distinct from the duties owed in the contract to prevail. (Def. Mem. (DE 19) at 6–7). Defendants overlook that the law, independent of any contract, imposes a duty not to defraud others. See Forbis v. Neal, 361 N.C. 519, 527 (2007); Ragsdale v. Kennedy, 286 N.C. 130, 138 (1974). Likewise, North Carolina law prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. 75-1.1. While plaintiff's breach of contract claim looks to whether defendant performed under the Agreement, plaintiff's fraud and UDTPA claims focus on whether defendants procured the Agreement under false pretenses or deceptively performed under the Agreement to increase their income without plaintiff's knowledge or consent. See Oestreicher, 290 N.C. at 133; Jones v. Harrelson & Smith Contractors, LLC, 194 N.C. App. 203, 215 (2008), aff'd, 363 N.C. 371, 677 S.E.2d 453 (2009) ("[E]vidence insufficient to establish a breach of contract may nonetheless be admissible to prove that a contract was fraudulently induced or that the defendant committed unfair and deceptive trade practices.").

Viewing the facts in light most favorable to plaintiff, the court concludes that the economic loss rule does not bar plaintiff's fraudulent misrepresentation, declaratory relief and rescission, negligent misrepresentation,[1] unfair and deceptive trade practices, punitive damages, and civil conspiracy claims.

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss (DE 18) is DENIED.

SO ORDERED, this the 6th day of August, 2019.

LOUISE W. FLANAGAN
United States District Judge

---

[1] The court allows plaintiff's negligent misrepresentation claim to remain because, according to plaintiff, the alleged misrepresentations of defendants' licensure and experience induced the contract. (See Am. Compl. ¶¶ 25, 63–72). The court does not address at this juncture whether negligent misrepresentation of invoice amounts, standing alone, is barred by the economic loss rule.